UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EUGENIO CARMONA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>LOMA NEGRA COMPANIA INDUSTRIAL ARGENTINA SOCIEDAD ANONIMA, LOMA NEGRA HOLDING GMBH, SERGIO FEIFMAN, MARCOS ISABELINO GRADIN, RICARDO FONSECA DE MENDOCA LIMA, LUIZ AUGUSTO KLECZ, PAULO SERGIO DE OLIVEIRA DINIZ, CARLOS BOERO HUGHES, DIANA MONDINO, And SERGIO DANIEL ALONSO,<br><br>Defendants. | Case No.<br><br><u>CLASS ACTION</u><br><br>COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Eugenio Carmona ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Loma Negra Compania Industrial Argentina Sociedad Anonima ("Loma Negra" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

1

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of all persons or entities who purchased or otherwise acquired Loma Negra American Depositary Shares ("ADS") pursuant or traceable to the F-1 registration statement, incorporated *in pari materia* F-6 registration statement, and related prospectus (collectively, the "Registration Statement") issued in connection with Loma Negra's November 2017 initial public stock offering (the "IPO" or "Offering").

2.      The action asserts claims under §§ 11, 12, and 15 of the Securities Act of 1933 ("Securities Act") (15 U.S.C. § 77 et seq.), against Loma Negra, certain Loma Negra officers and directors, and the selling shareholder in the IPO.

3.      Loma Negra is a South American manufacturer and distributor of cement, concrete, and other building materials.  Headquartered in Buenos Aires, Argentina, Loma Negra conducted its IPO in New York, and its ADS are listed on the New York Stock Exchange ("NYSE") under the ticker symbol "LOMA."

4.      In November 2017, Defendants commenced the IPO, issuing approximately 53.5 million ADS to the investing public at $19 per share, all pursuant to the Registration Statement.

5.      The Registration Statement contained untrue statements of material fact and omitted to state material facts both required by governing regulations and necessary to make the statements made not misleading.

6.      Foremost, the Registration Statement downplayed and misrepresented Loma Negra's exposure to a massive, ongoing corruption scandal engulfing its majority owner, for example stating:

> InterCement Participa. ões S.A., our controlling shareholder, is a holding company for the cement business of the Camargo Corrêa group. Construções e Comércio Camargo Corrêa S.A., or CCCC, a construction and engineering affiliate of InterCement Participações S.A., is also controlled by the Camargo Corrêa group.

CCCC and certain of its former senior management and employees have recently been the subjects of a Brazilian Federal Police investigation referred to as Operation Car Wash, which is an investigation into widespread allegations of corruption, including at the Brazilian federal government controlled national oil company Petróleo Brasileiro S.A.—Petrobras, where certain of its employees accepted bribes from a number of construction companies, including CCCC.

In connection with the Operation Car Wash investigation and comprehensive internal investigations undertaken by CCCC with the assistance of external experts, CCCC and certain of its former senior management and employees entered into leniency and plea bargain agreements with the Brazilian authorities pursuant to which they admitted to violations of Brazilian antitrust and anti-corruption laws and agreed to pay compensation totaling more than 800 million Brazilian reals , which included fines and other indemnification, and committed to continue to cooperate with Brazilian authorities. In addition, CCCC continues to conduct internal investigations on an ongoing basis regarding its anti-corruption compliance.

The news of Operation Car Wash also had repercussions in other Latin America countries where CCCC operates besides Brazil, including Peru, Argentina and Venezuela. According to certain media reports, government investigations are underway in those countries for alleged acts of corruption involving Brazilian construction companies. CCCC's management has conducted internal investigations with the help of external experts and to-date has not identified evidence of any wrongdoing performed by CCCC in these countries.

7.      The Registration Statement further misrepresented a purported increased demand for Loma Negra's cement and other products as a result of economic growth and government funding for public works projects in Argentina, as well as the purported benefits to Loma Negra from that increased demand, for example stating:

We understand that the low cement consumption per capita in Argentina relative to other Latin American economies, the limited number of major infrastructure investments in the country over the last decade, the local housing deficit and the growth prospects for the Argentine economy create a compelling opportunity for the construction sector and will jointly drive demand for cement, masonry cement, concrete, aggregates, lime and other building materials.

\*\*\*

Similar to other regional markets, the demand for cement in Argentina is expected to be driven by infrastructure projects as well as residential and non- residential construction activity. In the near term, the announced infrastructure projects coupled with new financing sources for residential construction are expected to drive incremental local cement demand.

3

\*\*\*

We believe that our nationwide presence, production and distribution capabilities, our extensive limestone reserves as well as our recognized brand provide us with a competitive advantage to benefit from the expected growth dynamics in our markets in the near and medium term. We also believe that the relatively low cement consumption per capita in Argentina compared to other countries, the housing deficit, the positive macroeconomic outlook and the announced infrastructure investment plans will translate into growth opportunities in the construction sector driving incremental demand for cement, masonry cement, concrete, lime, aggregates and other building materials.

\*\*\*

We intend to take advantage of our differentiated market position in Argentina and further improve our market position to consistently capture the increasing cement demand anticipated as a consequence of the expected recovery of the Argentine economy. In effect, as the leader in the Greater Buenos Aires region, we are participating in most of the major construction and infrastructure public projects that have commenced in 2017 in the Province of Buenos Aires, supplying their respective cement and concrete needs. We expect to continue to pursue organic growth on the basis of our value proposition to customers and recent investments in maintenance and new facilities.

8.      The Registration Statement further misrepresented events and trends in the Argentinian economy, as well as Loma Negra's exposure thereto, as follows:

Plans for Correction of Monetary Imbalances. Adoption of an inflation targeting regime in parallel with the floating exchange rate regime and setting inflation targets for the next four years. The Central Bank has increased sterilization efforts to reduce excess monetary imbalances and raised Peso interest rates so as to offset inflationary pressure. Inflation remained high during 2016 at 39% as a result of the reforms implemented, but it is expected to decline to the 20% area in 2017 and further going forward.

9.      The Registration Statement also purported to warn of numerous risks that "*if*" occurring "*could*" materially affect the Company.  For example, the Registration Statement stated:

- "[A]dditional violations of anti-corruption and/or antitrust laws involving CCCC *may result in* additional fines and/or indemnification obligations."

- "[A]ny additional adverse events or developments *could have a material adverse* impact on CCCC and the Camargo Corrêa group, *which may subject us to reputational damage* and could materially adversely affect the trading price of our ordinary shares and ADSs."

4

- "[A]lthough we have been informed by CCSA and its counsels that CCCC should be solely liable for any violations by CCCC of antitrust and/or anti-corruption laws, ***no assurances can be given*** that affiliates of CCCC will not also be found to be liable for any such violations of law."

(Emphases added.)

10.    The foregoing representations, reported results and trends, and purported risk disclosures were false and misleading because:

- The massive, ongoing corruption scandal investigation had uncovered evidence of ***bribery*** of the Kirchner administration ***in procurement of public works contracts in Argentina***, including the contract to build the Bicentenario water treatment plant in Buenos Aires Province;

- Loma Negra was already suffering, and would likely continue to suffer, ***reputational damage*** and adverse impact on its business as a result of the ***ongoing corruption scandal***;

- Loma Negra's ***majority ownership had defrauded the Argentinian government*** in the procurement and execution of a major public works contract, and consequently Loma Negra would likely be excluded from supplying cement to Argentinian public works contracts, including those touted in the Registration Statement as critical to the Company's success;

- the Argentinian government was already running fiscal deficits and ***had already delayed payments to its existing public works contractors***, which thus threatened funding to major infrastructure investments;

- the ***ongoing, massive corruption*** among construction companies in Argentina, including Loma Negra's parent company, and disclosure thereof, ***put at severe risk the foreign investment necessary to Argentinian public infrastructure projects*** and consequently undermined and rendered unattainable the demand for Loma Negra's cement touted in the Registration Statement;

- the ***growth prospects*** for the Argentinian economy touted in the Registration Statement were already ***contradicted by negative macroeconomic trends, including inflation and currency exchange rates*** already exceeding the Argentinian government's targets; and

- ***Inflation*** was not on track to decline at the time of the IPO but rather ***had been rising over the preceding 10 months***, and thus ***was already negatively affecting Loma Negra's financial and operational conditions***, results, trends, and prospects.

11.     Defendants were required to disclose this material information in the Registration Statement for at least three independent reasons.  First, SEC Regulation S-K, 17 C.F.R. § 229.303 ("Item 303"), required disclosure of any known events or uncertainties that at the time of the IPO had caused or were reasonably likely to cause Loma Negra's disclosed financial information not to be indicative of future operating results.  The undisclosed materially negative events and trends were likely to (and in fact did) materially and adversely affect Loma Negra's results and prospects and rendered the disclosed results and trends in the Registration Statement misleading and not indicative of Loma Negra's future operating results.

12.     Second, SEC Regulation S-K, 17 C.F.R. § 229.503 ("Item 503"), required, in the "Risk Factor" section of the Registration Statement, a discussion of the most significant factors that make the offering risky or speculative and that each risk factor adequately describe the risk. Loma Negra's discussions of risk factors did not even mention, much less adequately describe the risk posed by, Loma Negra's exposure to the massive corruption scandal engulfing its majority ownership, the inflation, cement demand, and other already occurring negative results and trends, nor the likely and consequent materially adverse effects on the Company's future results, share price, and prospects.

13.     Third, Defendants' failure to disclose Loma Negra's exposure to the massive corruption scandal engulfing its majority ownership, nor the inflation, cement demand, and other already occurring negative results and trends, much less the likely and consequent materially adverse effects on the Company's future results, share price, and prospects, rendered false and misleading the Registration Statement's many references to known risks that "***if***" occurring "***might***" or "***could***" affect the Company.  These "risks" had already materialized at the time of the IPO.

14.     Defendants went forward with the IPO with the foregoing misrepresentations and omissions in the Registration Statement.   With these misrepresentations and omissions, the IPO was extremely lucrative for Defendants, who raised more than $1 billion in gross proceeds.

15.     But when the truth of Defendants' misrepresentations and omissions became known, the price of Loma Negra shares suffered sharp declines.  By the commencement of this action, Loma Negra shares traded below $11 per share, a decline of more than 40% from the offering price.  All told, investors lost hundreds of millions.

## JURISDICTION AND VENUE

16.     The claims asserted herein arise under Sections 11, 12(a)(2), and 15 of the Securities Act (15 U.S.C. §§ 77k, 77l(a)(2), and 77o).

17.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and Section 22 of the Securities Act (15 U.S.C. § 77v).

18.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Secion 27 of the Securities Act (15 U.S.C. §§ 77k, 77l(a)(2), and 77o).  Loma Negra conducted its IPO in this Judicial District, and its ADS are listed on the NYSE, located within this Judicial District.

19.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

20.     Plaintiff purchased Loma Negra ADS pursuant or traceable to the IPO and was damaged thereby.

21.     Defendant Loma Negra is a South American manufacturer and distributor of cement, concrete, and other building materials.  Incorporated under the laws of Argentina and

headquartered in Buenos Aires, Loma Negra conducted the IPO in New York, and its ADS are listed on the NYSE under the ticker symbol "LOMA."

22.     Defendant Loma Negra Holding GmBH (the "Selling Shareholder") is an Austrian limited liability company that, prior to the IPO, owned 99.4% of Loma Negra's outstanding capital stock. The Selling Shareholder is indirectly owned and controlled by InterCement, Loma Negra's controlling shareholder. InterCement in turn is controlled by Camargo Corrêa.  In the IPO, the Selling Shareholder sold 51,730,000 ADS for gross proceeds of approximately $983 million.

23.     Defendant Sergio Feifman was, at the time of the IPO, Loma Negra's Chief Executive Officer and Vice President of Loma Negra's Board of Directors.  Defendant Feifman reviewed, contributed to, and signed the Registration Statement.

24.     Defendant Marcos Isabelino Gradin was, at the time of the IPO, Loma Negra's Chief Financial Officer.  Defendant Gradin reviewed, contributed to, and signed the Registration Statement.

25.     Defendant Ricardo Fonseca de Mendoca Lima was, at the time of the IPO, President of Loma Negra's Board of Directors.  Defendant Lima reviewed, contributed to, and signed the Registration Statement.

26.     Defendant Luiz Augusto Klecz was, at the time of the IPO, a member of Loma Negra's Board of Directors.  Defendant Klecz reviewed, contributed to, and signed the Registration Statement.

27.     Defendant Paulo Sergio de Oliveira Diniz was, at the time of the IPO, a member of Loma Negra's Board of Directors.  Defendant Diniz reviewed, contributed to, and signed the Registration Statement.

28.     Defendant Carlos Boero Hughes was, at the time of the IPO, a member of Loma Negra's Board of Directors.   Defendant Hughes reviewed, contributed to, and signed the Registration Statement.

29.     Defendant Diana Mondino was, at the time of the IPO, a member of Loma Negra's Board of Directors.   Defendant Mondino reviewed, contributed to, and signed the Registration Statement.

30.     Defendant Sergio Daniel Alonso was, at all relevant times, a member of Loma Negra's Board of Directors.   Defendant Alonso reviewed, contributed to, and signed the Registration Statement.

31.     The Defendants named in ¶¶ 23-30 are referred to herein as the "Individual Defendants."   The Individual Defendants each signed the Registration Statement, solicited the investing public to purchase securities issued pursuant thereto, hired and assisted the underwriters, planned and contributed to the IPO and Registration Statement, and attended road shows and other promotions to meet with and present favorable information to potential Loma Negra investors, all motivated by their own and the Company's financial interests.

### DEFENDANTS' FALSE AND MISLEADING
### REGISTRATION STATEMENT AND PROSPECTUS

32.     On July 12, 2017, Loma Negra filed with the SEC a confidential draft registration statement on Form F-1, which, incorporating and in combination with related documents on Form F-6 and filed pursuant to Rule 424(b)(4), would be used for the IPO following a series of amendments in response to SEC comments, including comments from the SEC emphasizing the importance of adequately disclosing material trends and risk factors, as required by Items 303 and 503.

33.     On October 19, 2017, Loma Negra filed its final amendment to the Registration Statement, which registered over 53.5 million Loma Negra ADS for public sale.  The SEC declared

the Registration Statement effective on November 1, 2017.  On November 2, 2017, Defendants

priced the IPO at $19 per share and filed the final Prospectus for the IPO, which forms part of the

Registration Statement.  Through the IPO, Defendants issued and sold over 53.5 million ADS, all

pursuant to the Registration Statement.

34.    The Registration Statement contained untrue statements of material fact and

omitted to state material facts both required by governing regulations and necessary to make the

statements made not misleading.   Foremost, the Registration Statement downplayed and

misrepresented its exposure to a massive, ongoing corruption scandal engulfing its majority owner,

for example stating:

> InterCement Participações S.A., our controlling shareholder, is a holding company
> for the cement business of the Camargo Corrêa group. Construções e Comércio
> Camargo Corrêa S.A., or CCCC, a construction and engineering affiliate of
> InterCement Participações S.A., is also controlled by the Camargo Corrêa group.
>
> CCCC and certain of its former senior management and employees have recently
> been the subjects of a Brazilian Federal Police investigation referred to as Operation
> Car Wash, which is an investigation into widespread allegations of corruption,
> including at the Brazilian federal government controlled national oil company
> Petróleo Brasileiro S.A.—Petrobras, where certain of its employees accepted bribes
> from a number of construction companies, including CCCC.
>
> In connection with the Operation Car Wash investigation and comprehensive
> internal investigations undertaken by CCCC with the assistance of external experts,
> CCCC and certain of its former senior management and employees entered into
> leniency and plea bargain agreements with the Brazilian authorities pursuant to
> which they admitted to violations of Brazilian antitrust and anti-corruption laws
> and agreed to pay compensation totaling more than 800 million Brazilian reals ,
> which included fines and other indemnification, and committed to continue to
> cooperate with Brazilian authorities. In addition, CCCC continues to conduct
> internal investigations on an ongoing basis regarding its anti-corruption
> compliance.
>
> The news of Operation Car Wash also had repercussions in other Latin America
> countries where CCCC operates besides Brazil, including Peru, Argentina and
> Venezuela. According to certain media reports, government investigations are
> underway in those countries for alleged acts of corruption involving Brazilian
> construction companies. ***CCCC's management*** has conducted internal
> investigations with the help of external experts and to-date ***has not identified
> evidence of any wrongdoing performed by CCCC in these countries.***

(Emphases added.)

35.     The Registration Statement further misrepresented a purported increased demand

for Loma Negra's cement and other products as a result of economic growth government funding

for public works projects in Argentina, as well as the purported benefits to Loma Negra from that

increased demand, for example stating:

> We understand that the low cement consumption per capita in Argentina relative to other Latin American economies, the limited number of major infrastructure investments in the country over the last decade, the local housing deficit and the growth prospects for the Argentine economy create a compelling opportunity for the construction sector and will jointly drive demand for cement, masonry cement, concrete, aggregates, lime and other building materials.
>
> ***
>
> Similar to other regional markets, the demand for cement in Argentina is expected to be driven by infrastructure projects as well as residential and non- residential construction activity. In the near term, the announced infrastructure projects coupled with new financing sources for residential construction are expected to drive incremental local cement demand.
>
> ***
>
> We believe that our nationwide presence, production and distribution capabilities, our extensive limestone reserves as well as our recognized brand provide us with a competitive advantage to benefit from the expected growth dynamics in our markets in the near and medium term. We also believe that the relatively low cement consumption per capita in Argentina compared to other countries, the housing deficit, the positive macroeconomic outlook and the announced infrastructure investment plans will translate into growth opportunities in the construction sector driving incremental demand for cement, masonry cement, concrete, lime, aggregates and other building materials.
>
> ***
>
> We intend to take advantage of our differentiated market position in Argentina and further improve our market position to consistently capture the increasing cement demand anticipated as a consequence of the expected recovery of the Argentine economy. In effect, as the leader in the Greater Buenos Aires region, we are participating in most of the major construction and infrastructure public projects that have commenced in 2017 in the Province of Buenos Aires, supplying their respective cement and concrete needs. We expect to continue to pursue organic growth on the basis of our value proposition to customers and recent investments in maintenance and new facilities.

36.     The Registration Statement further misrepresented events and trends in the Argentinian economy, as well as Loma Negra's exposure thereto, as follows:

> Plans for Correction of Monetary Imbalances. Adoption of an inflation targeting regime in parallel with the floating exchange rate regime and setting inflation targets for the next four years. The Central Bank has increased sterilization efforts to reduce excess monetary imbalances and raised Peso interest rates so as to offset inflationary pressure. Inflation remained high during 2016 at 39% as a result of the reforms implemented, but it is expected to decline to the 20% area in 2017 and further going forward.

37.     The Registration Statement also purported to warn of numerous risks that "*if*" occurring "*could*" materially affect the Company.  For example, the Registration Statement stated:

- "[A]dditional violations of anti-corruption and/or antitrust laws involving CCCC *may result in* additional fines and/or indemnification obligations."

- "[A]ny additional adverse events or developments *could have a material adverse* impact on CCCC and the Camargo Corrêa group, *which may subject us to reputational damage* and could materially adversely affect the trading price of our ordinary shares and ADSs."

- "[A]lthough we have been informed by CCSA and its counsels that CCCC should be solely liable for any violations by CCCC of antitrust and/or anti-corruption laws, *no assurances can be given* that affiliates of CCCC will not also be found to be liable for any such violations of law."

(Emphases added.)

38.     The foregoing representations, reported results and trends, and purported risk disclosures were false and misleading because:

- The massive, ongoing corruption scandal investigation had uncovered evidence of bribery of the Kirchner administration in procurement of public works contracts in Argentina, including the contract to build the Bicentenario water treatment plant in Buenos Aires Province;

- Loma Negra was already suffering, and would likely continue to suffer, reputational damage and adverse impact on its business as a result of the ongoing corruption scandal;

- Loma Negra's majority ownership had defrauded the Argentinian government in the procurement and execution of a major public works contract, and consequently Loma Negra would likely be excluded from supplying cement to

Argentinian public works contracts, including those touted in the Registration
Statement as critical to the Company's success;

- the Argentinian government was already running fiscal deficits and had already
  delayed payments to its existing public works contractors, which thus
  threatened funding to major infrastructure investments;

- the ongoing, massive corruption among construction companies in Argentina,
  including Loma Negra's parent company, and disclosure thereof, put at severe
  risk the foreign investment necessary to Argentinian public infrastructure
  projects and consequently undermined and rendered unattainable the demand
  for Loma Negra's cement as touted in the Registration Statement;

- the growth prospects for the Argentinian economy touted in the Registration
  Statement were already undermined and contrary to negative macroeconomic
  trends, including inflation and currency exchange rates already exceeding the
  Argentinian government's targets; and

- Inflation was not on track to decline at the time of the IPO but rather had been
  rising over the preceding 10 months, and thus was already negatively affecting
  the Loma Negra's financial and operational conditions, results, trends, and
  prospects.

39. Defendants were required to disclose this material information in the Registration
Statement for at least three independent reasons. First, SEC Regulation S-K, 17 C.F.R. § 229.303
("Item 303"), required disclosure of any known events or uncertainties that at the time of the IPO
had caused or were reasonably likely to cause Loma Negra's disclosed financial information not
to be indicative of future operating results. The undisclosed materially negative events and trends
were likely to (and in fact did) materially and adversely affect Loma Negra's results and prospects
and rendered the disclosed results and trends in the Registration Statement misleading and not
indicative of Loma Negra's future operating results.

40. Second, SEC Regulation S-K, 17 C.F.R. § 229.503 ("Item 503"), required, in the
"Risk Factor" section of the Registration Statement, a discussion of the most significant factors
that make the offering risky or speculative and that each risk factor adequately describe the risk.
Loma Negra's discussions of risk factors did not even mention, much less adequately describe the
risk posed by, Loma Negra's exposure to the massive corruption scandal engulfing its majority

ownership, the inflation, cement demand, and other already occurring negative results and trends, nor the likely and consequent materially adverse effects on the Company's future results, share price, and prospects.

41.    Third, Defendants' failure to disclose Loma Negra's exposure to the massive corruption scandal engulfing its majority ownership, nor the inflation, cement demand, and other already occurring negative results and trends, much less the likely and consequent materially adverse effects on the Company's future results, share price, and prospects, rendered false and misleading the Registration Statement's many references to known risks that "*if*" occurring "*might*" or "*could*" affect the Company.  These "risks" had already materialized at the time of the IPO.

42.    Defendants went forward with the IPO with the foregoing misrepresentations and omissions in the Registration Statement.   With these misrepresentations and omissions, the IPO was extremely lucrative for Defendants, who raised more than $1 billion in gross proceeds.

43.    But when the truth of Defendants' misrepresentations and omissions became known, the price of Loma Negra shares suffered sharp declines.  By the commencement of this action, Loma Negra shares traded below $11 per share, a decline of more than 40% from the offering price.  All told, investors lost hundreds of millions.

## CLASS ACTION ALLEGATIONS

44.    Plaintiff brings this action as a class action on behalf of all those who purchased Loma Negra ADS pursuant or traceable to the Registration Statement (the "Class").  Excluded from the Class are Defendants and their families, the officers and directors and affiliates of Defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

45.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Loma Negra or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

46.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

47.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

48.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether Defendants violated the Securities Act;

(b)     whether the Registration Statement contained false or misleading statements of material fact and omitted material information required to be stated therein; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

49.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden

of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## FIRST CAUSE OF ACTION

### For Violation of § 11 of the Securities Act
### Against All Defendants

50.     Plaintiff incorporates all the foregoing by reference.

51.     This Cause of Action is brought pursuant to § 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against all Defendants.

52.     The Registration Statement contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

53.     Defendants are strictly liable to Plaintiff and the Class for the misstatements and omissions.

54.     None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

55.     By reason of the conduct herein alleged, each Defendant violated or controlled a person who violated § 11 of the Securities Act.

56.     Plaintiff acquired Loma Negra ADS pursuant to the Registration Statement.

57.     Plaintiff and the Class have sustained damages.  The value of Loma Negra ADS has declined substantially subsequent to and due to Defendants' violations.

58.     At the time of their purchases of Loma Negra shares, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to the disclosures herein.  Less than one year has elapsed from the time that Plaintiff discovered or reasonably could have discovered

the facts upon which this Complaint is based to the time that Plaintiff commenced this action.  Less than three years has elapsed between the time that the securities upon which this Cause of Action is brought were offered to the public and the time Plaintiff commenced this action.

## SECOND CAUSE OF ACTION

### For Violation of § 12(a)(2) of the Securities Act
### Against All Defendants

59.     Plaintiff incorporates all the foregoing by reference.

60.     By means of the defective Prospectus, Defendants promoted, solicited, and sold Loma Negra shares to Plaintiff and other members of the Class.

61.     The prospectus for the IPO contained untrue statements of material fact, and concealed and failed to disclose material facts, as detailed above.  Defendants owed Plaintiff and the other members of the Class who purchased Loma Negra shares pursuant to the prospectus the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading.  Defendants, in the exercise of reasonable care, should have known of the misstatements and omissions contained in the prospectus as set forth above.

62.     Plaintiff did not know, nor in the exercise of reasonable diligence could Plaintiff have known, of the untruths and omissions contained in the prospectus at the time Plaintiff acquired Loma Negra shares.

63.     By reason of the conduct alleged herein, Defendants violated § 12(a)(2) of the Securities Act.  As a direct and proximate result of such violations, Plaintiff and the other members of the Class who purchased Loma Negra shares pursuant to the prospectus sustained substantial damages in connection with their purchases of the shares.  Accordingly, Plaintiff and the other members of the Class who hold the ADS issued pursuant to the Prospectus have the right to rescind

17

and recover the consideration paid for their shares, and hereby tender their ADS to Defendants sued herein.  Class members who have sold their ADS seek damages to the extent permitted by law.

### THIRD CAUSE OF ACTION

### For Violation of § 15 of the Securities Act
### Against All Defendants

64.     Plaintiff incorporates all the foregoing by reference.

65.     This Cause of Action is brought pursuant to § 15 of the Securities Act against all Defendants.

66.     The Individual Defendants were controlling persons of Loma Negra by virtue of their positions as directors or senior officers of Loma Negra.  The Individual Defendants each had a series of direct and indirect business and personal relationships with other directors and officers and major shareholders of Loma Negra.  The Selling Shareholder controlled the Company.  The Company controlled the Individual Defendants and all of Loma Negra's employees.

67.     Loma Negra, the Selling Shareholder, and the Individual Defendants were culpable participants in the violations of §§ 11 and 12(a)(2) of the Securities Act alleged in the First and Second Causes of Action above, based on their having signed or authorized the signing of the Registration Statement and having otherwise participated in the process which allowed the IPO to be successfully completed.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands trial by jury.

Dated: December 5, 2018                              Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
Jonathan D. Lindenfeld
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com
Email: jlindenfeld@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email:  pdahlstrom@pomlaw.com

HEDIN HALL LLP
David W. Hall
Four Embarcadero Center, Suite 1400
San Francisco, CA  94104
Telephone: (415) 766-3534
Facsimile: (415) 402-0058
Email: dhall@hedinhall.com

KASKELA LAW LLC
D. Seamus Kaskela
skaskela@kaskelalaw.com
201 King of Prussia Road
Suite 650
Radnor, PA 19087
Telephone: (888) 715-1740
Facsimile: (484) 258-1585
Email: skaskela@kaskelalaw.com

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.      I, Eugenio Carmona, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.      I have reviewed a Complaint against Loma Negra Compañía Industrial Argentina Sociedad Anónima ("Loma Negra" or the "Company") and authorize its filing on my behalf.

3.      I did not purchase or acquire Loma Negra securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.      I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Loma Negra securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.      To the best of my current knowledge, the attached sheet lists all of my transactions in Loma Negra securities during the Class Period as specified in the Complaint.

6.      During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.      I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury of the laws of the United States that the foregoing is

true and correct.

      28/11/2018 11:43:51 PST

Date: _____

DocuSigned by:

—812AA520773D4C1...

Eugenio Carmona

### SUMMARY OF PURCHASES AND SALES

| DATE | PURCHASE/SALE | NUMBER OF SHARES | PRICE PER SHARE |
|---|---|---|---|
| 1/11/2018 | Purchase | 450 | $24.7833 |